# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTIAN HANCOCK, et al., | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| vs. | : | NO. 13-6596 |
| | : | |
| A&R FLAG CAR SERVICE, et al., | : | |
| Defendants | : | |

# M E M O R A N D U M

**STENGEL, C. J.**                                                                                               August 24, 2017

      The defendants have filed a motion to set aside and vacate the entry of default and default judgment in the above-captioned case. The plaintiffs have responded. For the following reasons, I will deny the motion.

## I. BACKGROUND

      The plaintiffs filed a five count collective action against the defendants for unpaid overtime compensation, unpaid minimum wage compensation, and unlawful deductions, alleging violations of the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, and Pennsylvania's common law. It also claims that the defendants failed to implement a system to track the number of hours worked each workweek. The defendants further allegedly forced the plaintiffs to pay for business expenses without reimbursement.

      The complaint alleges that Defendant A&R Flag Car Service operates an escort driving service. The plaintiffs operate what are called "flag cars" which "escorted" over-sized wide load trucks on the highway. Defendant John Flagler had control over the

plaintiffs' employment including processing payment and implementing/enforcing the above policies and practices. There are ten John Doe defendants who allegedly directed, aided, abetted, and/or assisted with creating and/or executing the other defendants' policies and practices which resulted in the failure to pay the plaintiffs proper compensation. Five of these ten defendants allegedly had control over processing payroll.

The complaint further alleges that the plaintiffs regularly worked more than forty hours per week. The defendants compensated the plaintiffs by paying them $0.85 per mile for the miles that they drove while escorting oversized loads. The defendants also paid the plaintiffs $10.00 per hour for time spent sitting during delays, and paid them approximately $25.00 and $55.00 per day for trips which required the plaintiffs to stay overnight in motels. The plaintiffs were required to transport their flag cars to and from the locations where each escort trip began and ended. They were compensated for the miles driven and hours worked while transporting the flag cars. The plaintiffs also had to pay for gasoline for their flag cars and were not reimbursed. The plaintiffs allege that they were not paid at least $7.25 per hour, and no overtime compensation was paid for hours worked in excess of forty in a work week.

The plaintiffs filed this action on November 13, 2013. A Summons was returned and filed on January 2, 2014, indicating that service had been accepted by Authorized Agent John Flagler on behalf of Defendant A&R Flag Car Service on December 19, 2013. See Document #2. Federal Rule of Civil Procedure 12(a)(1)(A)(i) required the

defendant to file a responsive pleading with the court within twenty-one days after being served with the summons and complaint, i.e., January 9, 2014.

A Summons was returned and filed on January 2, 2014, indicating that Defendant John Flagler had been personally served on December 19, 2013. See Document #3. Federal Rule of Civil Procedure 12(a)(1)(A)(i) required the defendant to file a responsive pleading with the court within twenty-one days after being served with the summons and complaint, i.e., January 9, 2014.

On February 4, 2014, because the defendants did not file an Answer, the plaintiffs requested the Clerk of Court to enter a default against the defendants pursuant to Federal Rule of Civil Procedure 55(a) for failure to respond to the complaint. See Document #5. On the same day, the Clerk of Court entered such a default.

On May 7, 2014, the plaintiffs filed an application for default judgment against the defendants pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. See Document #6. At that point, the defendants had not filed a responsive pleading to the complaint, or a response to the application for default judgment. Further, no attorney had filed an entry of appearance on behalf of the defendants.

On June 4, 2014, I ordered the defendants to show cause on or before June 16, 2014, as to why the court should not grant the relief sought in the plaintiffs' Application for Entry of Default Judgment. See Document #7. The defendants neither responded nor attended the hearing.

Following the hearing, I entered default judgment in favor of the plaintiffs and against the defendants in this case, for an amount of $70,894.20. In attempting to collect

on the judgment, the plaintiffs filed praecipes for writs of execution, which the Clerk's Office entered. Writs of garnishment were also entered as to two banks.

Because the defendants did not provide the plaintiffs with any answers, the plaintiffs filed a motion to compel post-judgment discovery, which I granted on May 13, 2015. In addition, I ordered the defendants to answer the plaintiffs' interrogatories in aid of execution within fifteen days. On July 17, 2015, the plaintiffs filed a motion for sanctions against the defendants for failure to comply with your Order. I scheduled a hearing for September 9, 2015, giving the defendants yet another chance to appear and show cause why an Order should not have been entered finding them in contempt of court for failure to comply with my Order dated May 13, 2015. I also ordered the defendants to file a written response to the Order to Show Cause by August 28, 2015. The defendants chose not to respond to that Order, and chose not to attend the hearing. The plaintiffs filed a brief informing the court that Defendant John Flagler had filed for bankruptcy under Chapter 13 of the U.S. Bankruptcy Code in this district on August 26, 2015.

Following the argument of plaintiffs' counsel at the hearing, I granted the plaintiffs' motion for sanctions, and found the defendants to be in contempt [1] of court for

---

[1] Civil contempt is a severe remedy, and requires a movant to demonstrate: (1) that a valid Order of the court existed; (2) that the defendants had knowledge of the Order; and (3) that the defendants disobeyed the Order. F.T.C. v. Lane Labs-USA, Inc., 624 F.3d 575, 582 (3d Cir. 2010). These elements must be proven by clear and convincing evidence, and ambiguities must be resolved in favor of the party charged with contempt. John T. v. Del. Cty. Intermediate Unit, 318 F.3d 545, 552 (3d Cir. 2003). Here, there were no ambiguities. The plaintiffs proved all three of the elements by clear and convincing evidence. I issued an Order on May 13, 2015, compelling the defendants to answer the plaintiffs' post-judgment discovery. The plaintiffs proved that the defendants were served with copies of the Order by regular and certified mail on

failure to comply with my Order dated May 13, 2015.  I further requested that the plaintiffs file an affidavit of costs and attorney's fees for their attempt at post-judgment discovery, and for the preparation of the motions to compel and for sanctions.

After a review of that affidavit, I ordered the defendants to pay attorney's fees and costs of $1,125.00 to the plaintiffs on October 26, 2015.  I also ordered them to provide full, complete, and verified responses to the plaintiffs' discovery without objection, within ten days of the date of that Order.  Finally, I stayed the Order only as to Defendant John Flagler pending his individual bankruptcy proceeding.

On January 15, 2016, the plaintiffs filed a second motion for sanctions, asking that I issue a bench warrant for the arrest of Defendant John Flagler as president of Defendant A&R, and that I keep Mr. Flagler in custody until he complied with my Orders and fully responded to the plaintiffs' post-judgment discovery requests.  Almost two months later, defense counsel entered his appearance on behalf of the defendants, filed the motion to set aside the default judgment against the defendants, and also filed a response to the plaintiffs' second motion for sanctions.  On August 29, 2016, I denied the motion for sanctions, finding that the issuance of a bench warrant was a drastic measure and one which I found was hardly warranted by the circumstances of this case.

## II.  LEGAL STANDARD

Rule 55(c) provides that "for good cause shown the court may set aside an entry of default and, if a judgment has been entered, may likewise set it aside in accordance with

---

May 15, 2015.  The defendants did not comply with the Order.  Accordingly, I found the defendants to be in contempt of court, and granted the plaintiffs' motion for sanctions.

5

Rule 60(b)." FED.R.CIV.P. 55(c). Rule 60(b) provides, in pertinent part: "on motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, Order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect....or for 'any other reason that justifies relief.'" FED.R.CIV.P. 60(b)(1), (6). The Court has broad discretion in deciding whether to set aside a default judgment. Clement Momah, M.D. v. Albert Einstein Med. Ctr., 161 F.R.D. 304, 307 (E.D. Pa. 1995). In general, defaults are not favored because the interests of justice are best served by reaching a decision on the merits. Id. The Third Circuit has explicitly stated it "does not favor default judgments and in a close case, doubts should be resolved in favor of setting aside the default and reaching the merits." Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 420 (3d Cir. 1987). Thus, motions to set aside default judgments are construed in favor of the movant. Brokerage Concepts, Inc., v. Nelson Med. Group, No. 99-cv-5214, 2000 U.S. Dist. LEXIS 2848 (E.D. Pa. Mar. 15, 2000).

The Third Circuit has articulated the following four-part test that courts must consider in deciding whether to set aside a default judgment: (1) whether the plaintiff will be prejudiced if the default judgment is set aside; (2) whether the defendant has a meritorious defense; (3) whether the default was the product of defendant's culpable conduct; and (4) whether alternative sanctions would be effective. Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987); Blue Ribbon Commodity Traders, Inc. v. Quality Foods Distributors, No. 07-cv-4037, 2007 U.S. Dist. LEXIS 90813 (E.D. Pa. December 11, 2007).

6

## III. DISCUSSION

The defendants correctly point out that default judgments are strongly disfavored within the Eastern District of Pennsylvania and Third Circuit because "the interest of justice are best served by reaching a decision on the merits." Natasha C. v. Vision Quest, Ltd., No.03-cv-0193, 2003 U.S. Dist. LEXIS 14631, at 3-4 (E.D. Pa. August 26, 2003). As such, the district courts have broad discretion in determining whether to set aside a default judgment. Momah, M.D. v. Albert Einstein Med. Ctr., 161 F.R.D. 304, 307 (E.D. Pa. 1995); Harad v. Aetna Casualty and Surety Co., 839 F.2d 979, 982 (3d Cir. 1988). A standard of "liberality" rather than "strictness" should be used so that "any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits." City of Philadelphia v. Stone Int'l Resources, 1996 U.S. Dist. LEXIS 14964,*10 (E.D. Pa. 1996) (quoting Medunic v. Lederer, 533 F.2d 891, 893-894 (3d Cir. 1976)).

Here, the defendants argue that each of the four factors necessitates vacating and setting aside the entry of default and default judgment against them. The plaintiffs respond that the motion should be denied.

### A. Prejudice to Plaintiff

The first factor to be considered is whether granting the motion to vacate the default would prejudice the plaintiffs. A plaintiff is prejudiced by the setting aside of a default judgment when "plaintiff's claim would be materially impaired because of the loss of evidence, an increased potential for fraud or collusion, substantial reliance on the entry of default, or other substantial factors." Dizzley v. Friends Rehab. Program, 202

7

F.R.D. 146, 147-48 (E.D. Pa. 2001); see also Blue Ribbon Commodity Traders, Inc. v. Quality Foods Distributors, No. 07-4037, 2007 U.S. Dist. LEXIS 90813 (E.D. Pa. December 11, 2007).

The defendants argue that the plaintiffs will not be prejudiced by the setting aside of the judgment because none of the evidence that existed at the time of the complaint's filing has been tampered with, destroyed or lost, or will become unavailable. Further, according to the defendants, there is no reason to suspect any fraud or collusion by the defendants.

While the defendants' allegations might be true, it cannot be ignored that the plaintiffs have been diligently attempting to secure the relief sought in the complaint since the inception of this case, much to the indifference of the defendants. It is possible that the plaintiffs may be prejudiced by reopening this action, and starting afresh. However, whatever prejudice results would not be sufficient enough to weigh in favor of denying the motion to set aside and vacate the judgment. At best, this factor is neutral.

**B. Meritorious Defense**

Next, I must consider whether the defendants have presented a meritorious defense to the plaintiffs' claims. The defendants insist that they do, in fact, possess a complete defense to the plaintiffs' claims. They indicate that the plaintiffs were not employees, but independent contractors and are therefore exempt from the Fair Labor Standards Act overtime provisions.

The Fair Labor Standards Act broadly defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The Act defines an "employer" as

8

"any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To make the determination of whether a plaintiff is an employee or an independent contractor, courts should consider "whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service." Id.; see also Tony & Susan Alamo Found v. Sec'y of Labor, 471 U.S. 290, 301 (1985) (In determining whether an individual is an employee or a contractor, courts must assess the "economic reality" to determine if the worker is economically dependent on the business to which he or she renders service). The Third Circuit Court of Appeals has embraced the economic realities analysis for determining whether workers are employees under the FLSA. Martin v. Selker Bros., Inc., 949 F.2d 1286, 1293 (3d Cir. 1991) ("In accordance with [the FLSA's] expansive definitions, the Supreme Court has emphasized that the courts should look to the economic realities of the relationship in determining employee status under the FLSA.") The worker's economic dependence on the employer, considering the entirety of the economic realities of the working relationship, is the touchstone of employment under the FLSA. Martin, 949 F.2d at 1293. The Third Circuit has suggested that the following six factors are relevant in determining the "economic reality" of a relationship:

> [T]he determination of the employment relationship does not depend on isolated factors but rather upon the circumstances of the whole activity... Although neither the presence nor the absence of any particular factor is dispositive, we have held that there are six factors to determine whether a worker is an 'employee:' (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss

> depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; [and] (6) whether the service rendered is an integral part of the alleged employer's business.

Martin v. Selker Bros., Inc., 949 F.2d 1286, 1293 (3d Cir. 1991) (citing Donovan v. DialAmerica Marketing, Inc., 757 F.2d 1376, 1382 (3d Cir.), cert. denied, 474 U.S. 919 (1985)). "[N]either the presence nor absence of any particular factor is dispositive and . . . courts should examine the 'circumstances of the whole activity.'" DialAmerica, 757 F.2d at 1382 (3d Cir. 1985).

Without discovery, it is difficult to make the determination of whether the plaintiffs were independent contractors or employees of the defendants. I must rely on allegations in the Complaint and the defendants' responses in their proposed Answer. Most of these allegations, however, address the manner in which the defendants compensated the plaintiffs, with no insight into the degree of the defendants' right to control the manner in which the actual work was performed, or into the plaintiffs' opportunity for profit or loss depending upon their managerial skills.

Further, the plaintiffs allege that, as escort drivers, their primary duty was escorting trucks carrying oversized loads by operating a "flag car." It is unclear from the allegations who owned these pick-up trucks known as flag cars. The ownership of the flag cars would assist in considering the plaintiffs' investment in equipment or materials required for their tasks. For example, in Paragraph #42 of the complaint, the plaintiffs allege, "Defendants required Named Plaintiffs to transport *their* flag car to and from the

locations . . ." Does the possessive adjective relate to "Defendants," or to "Plaintiffs?" But, in Paragraph #53, the plaintiffs allege that "Named Plaintiff Hancock also spent around $175 on fuel needed to operate *his* flag car . . ." Does the possessive adjective suggest that Mr. Hancock owns the flag car, or just that it was the particular flag car he was driving on that particular day? Without specific information, it is difficult to determine whether the plaintiffs were required to invest in equipment or materials to perform their tasks for the defendants.

Next, the service the plaintiffs provided to the defendants was to drive a pick-up truck known as a flag car and escort wide-load trucks to their destinations. I will consider that service a special skill under these circumstances.

The Complaint alleges specifically that Named Plaintiff Hancock worked for the defendants as an escort driver for approximately five and a half months. Named Plaintiff Lanyon worked for them as an escort driver for approximately two years and five months. These allegations reveal more of a steady working relationship than a shorter, less permanent one.

Finally, if a worker performs work that serves the primary purpose of the business, that work is an integral part of the business. DialAmerica, 757 F.2d at 1385; Martin, 949 F.2d 1295. "The critical consideration in assessing the integral relationship factor is the nature of the work performed by the workers: does that work constitute an 'essential part' of the alleged employer's business? In other words, regardless of the amount of work done, workers are more likely to be 'employees' under the FLSA if they perform the primary work of the alleged employer." DialAmerica, 757 F.2d at 1385.

11

Here, the defendants have admitted that the plaintiffs worked as escort drivers for Defendant A&R Flag Car Services, which the defendants admitted is an escort driving service provider. See Document #27, Exhibit A at ¶¶ 9, 20-21. These admissions undermine the defendants' defense that the plaintiffs were independent contractors under the FLSA. Therefore, the defendants cannot dispute that the work the plaintiffs performed was integral to the defendants' business.

Accordingly, while the defendants have asserted the defense that the plaintiffs were independent contractors and thus exempt from the FLSA, there is insufficient evidence to support that assertion. I must find that the defendants have failed to establish that they have a meritorious defense to plaintiffs' claims under the FLSA.

**C. Culpable Conduct**

Rule 60(b) of the Federal Rule of Civil Procedure allows a court to set aside a default judgment for mistake, inadvertence, surprise, excusable neglect or for any other reason that justifies relief." FED.R.CIV.P. 60(b). I must therefore determine whether the defendants' failure to respond to the complaint and my Orders amounted to culpable conduct or excusable neglect. Culpable conduct is found when the defendant has acted with willfulness or bad faith. GMAC Bank v. HTFC Corp., 2013 U.S. Dist. LEXIS 120261 at 26 (E.D. Pa. August 13, 2013). It is found when there is "a reckless disregard for repeated communications from the Plaintiff or the Court." Id. In this Circuit, "[e]ven where neglect is inexcusable, and where the court cannot condone a defendant's failure to respond to a lawsuit for an extended period of time, culpable conduct warranting the refusal to set aside default must rise to the level of 'flagrant bad faith,' and 'callous

disregard of responsibility.'" Blue Ribbon, 2007 U.S. Dist. LEXIS 90813, *9 (quoting Griffen v. Alpha Phi Alpha, Inc., 2006 U.S. Dist. LEXIS 82435 (E.D. Pa. Nov.9, 2006)).

Here, the defendants argue that their failure to file a timely response to the plaintiffs' complaint was not the result of bad faith but the unfortunate consequence of Defendant Flagler's illness. They indicate that in 2011, Defendant Flagler suffered a massive heart attack, has not worked since then, is now collecting Social Security Disability Benefits, and continues to suffer severe health complications.

While these allegations may be truthful, I am not persuaded that the defendants' continued lack of respect for our adversarial process can be blamed on Defendant Flagler's illness. The defendants repeatedly chose to forgo participation in this action. Instead, they preferred to shirk their responsibility of filing responsive pleadings to the plaintiffs' complaint and motions, to ignore several court Orders, and to refuse to participate in post-judgment discovery. They were even found to be in contempt of court.

I also note that the defendants failed to provide any medical evidence to support their allegation that Mr. Flagler's ill health prevented him from defending this action, or even contacting the court to explain his situation. As the plaintiffs observed, the defendants' excuse of ill health is belied by the fact that the defendants employed Attorney Mark Sigmon in July 2014, a month after the entry of default judgment, to evaluate the default judgment entered against them. See Document #30, Exhibit A. Notwithstanding Attorney Sigmon's review of the case, the defendants waited until March 4, 2016 to begin to participate in this action. I cannot help but correlate that development with the filing of the plaintiffs' second motion for sanctions requesting that

13

Mr. Flagler be incarcerated until he complied with my Orders requiring him to respond to the plaintiffs' interrogatories. I also note, as the plaintiffs point out, that Mr. Flagler's health problems did not prevent him from hiring Mr. Sigmon to file for bankruptcy on August 26, 2015.

Accordingly, I must find that the defendants' failure to respond to the complaint, to other motions, and to my Orders amounted to culpable conduct. The defendants willfully disregarded repeated communications from the plaintiffs and this court. The defendants acted in bad faith and with callous disregard of their responsibility to defend this action.

**D. Alternative Sanctions**

Finally, I must consider the appropriateness of alternative sanctions. The defendants argue that courts in our district have held that punitive sanctions are inappropriate where a defendant has a meritorious defense, and has not acted in bad faith. Royal Insurance Co. of America v. Packaging Coordinators, Inc., 2000 U.S. Dist. LEXIS 15471, *3 (E.D. Pa. October 24, 2000). Thus, they argue, because they have a meritorious defense to the claims, and there is no evidence that they acted with willful conduct or in bad faith, the sanction of permitting the default judgment to lie is inappropriate.

Despite their arguments, the truth is that the defendants chose to ignore this action until they were faced with the possibility of Mr. Flagler's incarceration. By then, over two years had passed since the inception of this case. They were given many opportunities to respond to the plaintiffs, and to come into court to show cause why

14

default judgment should not be entered against them, and why they should not be held in contempt of court. All of that fell on deaf ears. Thus, I can think of no other sanctions which would be appropriate here.

In conclusion, after consideration of the four factors courts must review in deciding whether to set aside a default judgment, especially the lack of a meritorious defense and the finding of culpable conduct, I will deny the defendants' motion to set aside and vacate the entry of default and default judgment.

An appropriate Order follows.